# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. _____ – Civ

OSEM USA INC. and SOCIÉTÉ DES
PRODUITS NESTLÉ S.A.,

                    Plaintiffs,

    vs.

MEGA KOSHER DISTRIBUTION, INC.

                Defendant.

**<u>COMPLAINT</u>**

## COMPLAINT

Plaintiffs Osem USA Inc. ("Osem USA") and Société des Produits Nestlé S.A. ("SPN") (collectively, "Plaintiffs"), by their attorneys, bring this complaint against defendant Mega Kosher Distribution, Inc. ("Mega Kosher" or "Defendant") as follows:

## NATURE OF ACTION

1.      This action arises from Mega Kosher's unauthorized distribution and sale of Nestlé food products in the United States that were intended for sale in Israel.

2.      Osem USA, a Nestlé subsidiary company, sells Nestlé food products throughout the United States. Osem USA's corporate affiliate, SPN, is the owner of Nestlé's trademarks in the United States, and Osem USA was granted an exclusive license to Nestlé's trademarks and associated rights for the products at issue in this case. Accordingly, Osem USA is responsible for the marketing, labeling, and distribution of certain Nestlé products in the United States. Those products include Bamba peanut butter puffs, Bissli wheat snacks, and Fitness wholegrain crackers and rice cakes.

3.      Osem USA takes its responsibilities seriously by ensuring that the contents, packaging, and labeling of the Nestlé products it sells in the United States comply with U.S. laws and regulations; by subjecting the products to rigorous quality control standards; and by providing high-quality post-sale services to its customers. Those practices correspond with the preferences of U.S. customers, who consider products to be higher quality when they comply with U.S. laws and regulations, are formulated to match U.S. consumer tastes, and feature the post-sale services that Osem USA provides. These activities have ensured continued goodwill for Nestlé trademarks in the United States, which in turn allows Osem USA to profit from the sale of Nestlé products to U.S. consumers. Mega Kosher is a consummate "free rider," unfairly profiting off the value of

Nestlé's trademarks and the investment that Osem USA and its authorized distributors have made in creating consumer demand for Nestlé products in the United States.

4.     Mega Kosher is a Florida-based specialty grocery importer and wholesaler that distributes kosher food and beverage brands to independent retailers in the United States, including products manufactured by Osem Investments, Ltd. ("Osem Israel"), a wholly-owned subsidiary of Nestlé, that are intended for sale exclusively *in Israel*. SPN is the sole owner of all Nestlé trademarks associated with Nestlé-branded products in the United States. Mega Kosher, conversely, is *not* an owner or licensee of Nestlé trademarks in the United States, and neither Osem USA nor SPN has authorized Mega Kosher to sell Nestlé-trademarked products. Trademarked products that are imported and sold in this manner without consent of the trademark owner are often referred to as "parallel imports" or "grey market goods."

5.     Osem USA sells its own version of certain Osem Israel products to U.S. consumers using the same Nestlé trademarks as the grey market goods sold by Mega Kosher. However, customers and consumers purchase the grey market products sold by Mega Kosher without realizing that they are not authorized by Osem USA or SPN for resale in the United States. Despite being sold under the same brands, using the same Nestlé trademarks, and having similar appearances, the Osem Israel products sold by Mega Kosher are materially different from their corresponding Osem USA Products (as defined below).

6.     These differences can have serious repercussions for Osem USA and Osem USA's authorized distributors, retailers, and consumers. The grey market products that Mega Kosher sells in the United States are not properly labeled in compliance with the Food, Drug, and Cosmetic Act and the Food & Drug Administration's ("FDA") regulations and guidance. For instance, these grey market products often have Hebrew-only labels that contain different nutritional information than

the Osem USA versions of those products. Moreover, the grey market products may contain formulations not intended for the U.S. market, and the grey market products are not subject to Osem USA's same quality control standards and post-sale services such as product returns, spoils allowances, and customer support services. Rather, the grey market products are specially formulated and labeled for consumption in foreign markets; they are manufactured in accordance with foreign regulatory requirements, procedures, and quality controls; and they are not subject to post-sale services in the United States.

7.      As a result of Mega Kosher's actions and the resulting consumer confusion, Osem USA and its authorized distributors in the United States have lost and are at risk of continuing to lose retail customers. Mega Kosher's actions have harmed and continue to harm Osem USA, its business partners, and its customers.

8.      Accordingly, Osem USA and SPN bring this action to prevent Mega Kosher's further distribution and sale of grey market Nestlé products and to disgorge Mega Kosher's profits from these illicit sales. Plaintiffs seek this relief through claims under the federal Lanham Act and Florida state and common law claims.

## THE PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Osem USA is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 333 Sylvan Avenue in Englewood Cliffs, New Jersey. Osem USA is an exclusive licensee for Nestlé products in the United States, where it is responsible for the marketing and distribution of those products.

10.     Plaintiff SPN is a corporation organized and existing under the laws of Switzerland, with its principal place of business located at Entre-deux-Villes, 1800 Vevey Switzerland. SPN is

the registered owner of Nestlé's trademarks in the United States, including the trademarks used in connection with products sold by Osem USA.

11.     Defendant Mega Kosher is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 16710 Senterra Drive, Delray Beach, Florida 33484. Mega Kosher is a specialty distributor of Israeli grocery products.

12.     This Court has personal jurisdiction over Mega Kosher because Mega Kosher is incorporated in Florida, its principal place of business is located in the Southern District of Florida, it regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Mega Kosher giving rise to Plaintiffs' claims and the damages and injuries complained of occurred in the Southern District of Florida.

13.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1367, as well as under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

14.     Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b).

## FACTUAL ALLEGATIONS

### *Osem USA, SPN, and Osem USA Products*

15.     As a major multinational company—indeed, the largest food and beverage company in the world—Nestlé entities operate in many different countries. In the United States and Israel, those operating entities include (among others) Osem USA and Osem Israel, respectively. Osem USA is responsible for the marketing, distribution, and sale of over one hundred Nestlé products (the "Osem USA Products") in the United States. Osem Israel is similarly responsible for the marketing, distribution and sale of certain Nestlé branded products in Israel, including those brands at issue here.

16.     Osem USA devotes substantial effort and resources to ensure that Osem USA Products cater to the preferences of United States consumers, are safe to consumers, and comply with U.S. laws and regulations. Before the distribution and sale of Osem USA Products, Osem USA ensures that Osem USA Products are properly manufactured, packaged, and labeled according to their intended specifications/formulations. After the Osem USA Products are distributed, Osem USA continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings.

17.     Osem USA sells its products directly to retailers and through a network of authorized distributors that distribute Osem USA Products throughout the United States, including in Florida. By carefully evaluating and negotiating with its authorized distributors, Osem USA ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with the Osem USA Products and the Nestlé brand name. Where Osem USA's distributors fail to provide the high-quality services that Osem USA expects, Osem USA may take corrective measures.

18.     Osem USA's sale of the Osem USA Products in the United States has been tremendously successful because of its efforts to ensure the high quality of those products and its substantial investment in the marketing and promotion of Osem USA Products to U.S. consumers.

19.     Osem USA is responsible for its own marketing, manufacturing, and sales activities in the United States related to the Osem USA Products. Osem USA's decisions are made by its own, separate corporate officers and directors, and its operations are run by its own officers and employees. Osem USA maintains separate directors, separate payroll, and separate corporate records from other Nestlé-affiliated entities.

20.     SPN is the registrant in the U.S. and holds legal title to the trademarks at issue. SPN does not engage in any marketing, manufacturing, or sales activities in the United States or Israel. SPN's decisions are made by its own, separate corporate officers and directors. SPN maintains separate directors, separate payroll, and separate corporate records from affiliated entities.

***Trademarks for the Osem USA Products***

21.     Each of the Osem USA Products is marketed under a brand name that is subject to a trademark registered at the United States Patent and Trademark Office ("USPTO"). The registered owner of each trademark is SPN, which has entered into an agreement with Osem USA granting Osem USA an exclusive license to the rights associated with each trademark in the United States, including rights to enforce each trademark in the United States.

22.     The trademarks owned by SPN and registered with the USPTO (the "Nestlé Marks") that are relevant here include:

(a)     Nestlé. Since at least 1878, Nestlé entities have continuously used the trademark "Nestlé" on a variety of Nestlé products, including Osem USA Products. The "Nestlé" mark has been registered at the USPTO under various registration numbers, including 0188089, 0380007, 1105743, 1521476, 1534496, 1622720, 2089943, 2081154, 2121177, 2221586, 3343565, 37163174855611, 6427224, 0762828, 1110632, 2626227, 2814946, 2948560, 2960042, 3038486, 3326414, 3627438, 3813470, 3873751, 3873754, 4466477, 4614060, 5588685, 5588688, 5598624, 5775900, 6207482, 6297197, 6674136, 7065921, 7068769, 7117763, and 7147697.

(b)     Osem. Since at least 1969, Osem USA or its predecessor in interest has continuously used the trademark "Osem" on a variety of Osem USA Products. The "Osem"

mark has been registered at the USPTO under various registration numbers, including 0874385 and 3866805.

(c)   <u>Bamba</u>. Since at least 1997, Osem USA or its predecessor in interest has continuously used the trademark "Bamba" on a variety of Osem USA Products. The "Bamba" mark has been registered at the USPTO under various registration numbers, including 2039662 and 5846527.

(d)   <u>Bissli</u>. Since at least 2007, Osem USA or its predecessor in interest has continuously used the trademark "Bissli" on a variety of Osem USA Products. The "Bissli" mark has been registered at the USPTO under various registration numbers, including 5181279 and 3323348.

23.   The Nestlé Marks are inherently distinctive and have acquired a high degree of fame in the minds of U.S. consumers through consistent use over decades, widespread and substantial advertisement and promotion by Osem USA, and tremendous commercial success of the Osem USA Products nationwide. Customers throughout the United States recognize the Nestlé Marks as representative of the high quality of products sold by Osem USA.

24.   Osem USA has spent millions of dollars for products bearing the Nestlé Marks to appear in magazines and newspapers, on billboards, in television commercials, in stores, and on the Internet. These advertisements are regularly seen by consumers in every U.S. state, and Osem USA Products are offered for sale by nearly every major grocery provider across the country.

25.   As a result of these efforts, the Nestlé Marks are famous throughout the United States, including in Florida. The goodwill associated with the Nestlé Marks are of enormous value to Osem USA and SPN and are associated with Osem USA's high-quality food products. For instance, according to Brand Finance's Global 500 2023 report, the Nestlé brand ranked as the

eighty-fifth most valuable brand globally, with a brand value of more than $22 billion.[1] The Nestlé Marks became famous in the United States and globally long before Mega Kosher commenced its illegal and infringing activities that Plaintiffs complain of herein.

***Mega Kosher's Wrongful Distribution and Sale of Osem Israel Products in the United States***

26.     Mega Kosher is in the business of importing and distributing Israeli-made grocery products.

27.     Among the food products that Mega Kosher sells are products manufactured by Osem Israel.

28.     Neither Osem USA nor SPN has authorized Mega Kosher to distribute or sell Nestlé products in the United States. Osem USA and SPN also have not authorized Mega Kosher to use the Nestlé Marks in the United States in any manner.

29.     Nevertheless, Mega Kosher is in the business of acquiring products manufactured by Osem Israel that are intended for sale outside the United States (the "Osem Israel Products") and distributing and selling them to retailers and other customers in the United States.

30.     Neither Osem USA nor SPN has any involvement in the manufacturing, sale, or distribution of the Osem Israel Products.

31.     The Osem Israel Products that Mega Kosher sells include, among others:

- Bamba peanut butter puffs (regular and filled);
- Bissli wheat snacks; and
- Fitness wholegrain crackers and rice cakes.

---

[1]     Brand Finance, "Global 500 2023," January 2023, available at https://static.brandirectory.com/reports/brand-finance-global-500-2023-preview.pdf.

32.     Mega Kosher regularly publishes and provides retailers with product catalogs that use the Nestlé Marks and advertise Osem Israel Products for sale in the United States. For example, in a product catalog issued by Mega Kosher in August 2024, Mega Kosher advertises Osem Israel Products sold under the Bamba, Bissli, and Fitness brands. The product catalog contains dozens of images of Osem Israel Products that repeatedly display the Nestlé Marks:





page 1

| 93341 | 06318 | 87109 | 72067 |
| Bamba 1oz x 10 | Bamba, Classic 2.2oz | Bamba, Nuget filling 2.1oz | Bamba, Halvah filling 2.1oz |
| QTY/Box: 15 Price: $96 | QTY/Box: 48 Price: $68 | QTY/Box: 40 Price: $70 | QTY/Box: 40 Price: $70 |
| 09358 | 24062 | 66295 | 07071 |
| Bamba Brownies filling 2.1 oz | Bamba Belgian waffle filling 2.1 oz | Bamba, Sweet 1oz | Bamba Ariy 2.5oz |
| QTY/Box: 40 Price: $70 | QTY/Box: 40 Price: $70 | QTY/Box: 40 Price: $40 | QTY/Box: 46 Price: $69 |
| 03172 | 78692 | 02194 | 66141 |
| Bamba PRO 2.8OZ | Bamba Bisli 2.8z | Bisli, Falafel flavor 2.5oz | Bisli, Grill flavor 2.5oz |
| QTY/Box: 40 Price: $60 | QTY/Box: 36 Price: $59 | QTY/Box: 24 Price: $29 | QTY/Box: 48 Price: $58 |

11



page 2

| | | | |
|---|---|---|---|
| 67887 | O1741 | O1680 | 21498 |
| Bisli, Pizza flavor 2.5oz | Bisli, Onion flavor 2.5oz | **Bisli, BBQ flavor 2.5oz** | Bisli, Dip it Garlic flavor 2.1oz |
| QTY/Box: 24 Price: $29 | QTY/Box: 24 Price: $29 | QTY/Box: 48 Price: $58 | QTY/Box: 24 Price: $38 |
| 21511 | 68206 | O1550 | 179960 |
| Bisli, Dip it Mediterranean flavor 2.1oz | Bisli, Party flavor 5.3 oz | Bisli, Carnaval Mix flavor 5.3 oz | Cheetos Popcorn 2.1OZ |
| QTY/Box: 24 Price: $38 | QTY/Box: 24 Price: $78 | QTY/Box: 24 Price: $78 | QTY/Box: 24 Price: $44 |
| 66332 | O0572 | 21603 | 76223 |
| Apropo, Classic 1.8oz | Apropo, Italian style 1.8oz | Apropo, Caramel cream coated 1.4oz | Apropo, Chocolate coated 1.4oz |
| QTY/Box: 36 Price: $69 | QTY/Box: 36 Price: $69 | QTY/Box: 36 Price: $69 | QTY/Box: 36 Price: $69 |



33.    The Osem Israel Products distributed by Mega-Kosher in the United States, as explained further below, are materially different from the corresponding Osem USA Products marketed under the same brands. For instance, the Osem Israel Products use Hebrew-only labels with nutritional information and metric units that are inconsistent with FDA regulations; they have in some instances different formulations; and they are subject to different post-sale services.

***Material Differences Between Osem USA Products and Osem Israel Products Sold by Mega Kosher***

34.     For each of the Osem Israel Products sold by Mega Kosher, there is a similar but materially different Osem USA Product that is actually intended and authorized for sale in the United States. The Osem Israel Products sold by Mega Kosher use many of the same Nestlé Marks that appear on these Osem USA Products. For example:



| Osem USA Product | Osem Israel Product |
|---|---|
| Bamba | Bamba |
| Bissli | Bissli |

| Osem USA Product | Osem Israel Product |
|:---:|:---:|
| Fitness | Fitness |



35.    Despite their use of the same Nestlé Marks and similarities in appearance, there are material differences between the Osem USA Products and the Osem Israel Products concerning, among other things, the information contained on the labels, product composition/formulation, and post-sale services for the products.

Labels

36.    The Osem Israel Products sold by Mega Kosher are labeled in Hebrew while the Osem USA Products are labeled in English. For example:



| Osem USA Product | Osem Israel Product |
|---|---|
| Bamba | Bamba |
| Bissli | Bissli |



37.     This Hebrew-language-only labeling of the Osem Israel Products is a violation of FDA regulations that require products sold in the United States to be labeled in English and allow labeling in a foreign language such as Hebrew only when all required label elements are provided in both English and Hebrew. *See* 21 CFR § 101.15(c)(2).

38.     Many of the labels for the Osem Israel Products refer to an Israeli website affiliated with Osem Israel, https://www.osem-nestle.co.il/, whereas the corresponding labels for the Osem USA Products refer to websites affiliated with Osem USA, such as https://www.osem-nestleusa.com/. Likewise, many of the labels for Osem Israel Products provide a customer service line affiliated with Osem Israel, whereas the corresponding labels for the Osem USA Products provide a customer service line affiliated with Osem USA. For example:





The websites and customer service lines identified on the labels of the Osem Israel Products do not provide U.S. consumers with the information they need to contact the company responsible for the Osem USA Products in the event of a safety or quality concern, as Osem Israel is not responsible for the sale or distribution of food products in the United States.

39.     The Osem USA Products correctly identify Osem USA as the approved distributor for Osem-Nestlé-branded products intended for the U.S. market. However, for the Osem Israel Products, Mega Kosher places stickers on the shipping containers, incorrectly describing the grey market products as "produced by" Osem USA. In reality, Osem USA has no involvement with the manufacture, distribution, marketing, sale, or any other business activity associated with the Osem Israel Products. For example:

| Osem Israel Product |
|---|
| Bamba |
|  |

40.    The Nutrition Facts Panels on the labels for the Osem USA Products comply with FDA regulations, which specify certain formatting for font sizes, bolding, spacing, and lines between text as well as naming and order of nutrients listed. *See* 21 CFR § 101.9(c), (d). The Osem USA Products also comply with FDA regulations by providing serving sizes in appropriate units. *See* 21 CFR § 101.9(b). Further, consistent with new FDA nutrition labeling regulations that went into effect on January 1, 2020, the Osem USA Products' labels identify the added sugar content of the products and list calories in a designated larger font.

41.    However, the nutrition labels on the Osem Israel Products are different in appearance and content from the Nutrition Facts Panels on the labels for the Osem USA Products and are not compliant with FDA requirements. Many of the Osem Israel Products' nutritional labels lack the font sizes, bolding, spacing, lines between texts, naming, and order of nutrients mandated by FDA regulations and/or do not provide serving sizes in the units required by FDA regulations. Further, none of the Osem Israel Products identify their added sugar content or list calories in a designated larger font. In addition, many of the Osem Israel Product labels provide different nutritional information than the Osem USA Product labels because they have different formulations and/or recommended serving sizes. For example:



42.     The labels for the Osem USA Products identify the quantity of the Osem USA Products in both U.S. customary and metric units as required by FDA regulations. In contrast, the labels for the Osem Israel Products sold by Mega Kosher use only metric units. For example:

| **Osem USA Product** | **Osem Israel Product** |
|---|---|
| Bamba | Bamba |
|  |  |
| Bissli | Bissli |
|  |  |



| Osem USA Product | Osem Israel Product |
| --- | --- |
| Fitness | Fitness |

Product Composition and Formula

43.     The product compositions and formulations of the Osem USA Products and Osem Israel Products also differ in some instances. For example, the Osem USA and Osem Israel versions of Bamba have different sodium, carbohydrate, and sugar content per serving:

|  | Content Per Serving | |
| --- | --- | --- |
|  | Osem USA | Osem Israel |
| Sodium | 380mg | 390mg |
| Total Carbohydrates | 44g | 50g |
| Carbohydrates of Sugar | 3.2g | 3.5g |

Other Material Differences

44.     Beyond differences in their labeling and formulations, there are a number of additional material differences between the Osem USA Products and the Osem Israel Products.

45.     For example, before Osem USA Products are distributed and sold in the United States, they are subject to food safety and quality assurance processes to ensure they meet the requirements of U.S. laws and regulations. Products that Osem Israel manufactures for distribution in Israel must conform to Israel's food safety and quality standards, which are different from those in the United States. In addition, in the event of a quality issue or a product recall involving these Osem Israel Products, Osem USA may be unable to trace the Osem Israel Products and their ingredients to determine the source of the issue because the products were not distributed through Osem USA's authorized distribution channels. In some instances, Mega Kosher has printed and applied labels to the Osem Israel Products containing falsified manufacturing information, which further hinders Osem USA's ability to trace and remove these products from circulation.

46.     Similarly, Mega Kosher sometimes applies false expiration dates to the Osem Israel Products. By misrepresenting the expiration dates of its products, Mega Kosher causes consumers to ingest products that may result in a poor quality experience. As a result, Mega Kosher has caused further harm to the public perception of Osem-Nestlé-branded products.

47.     Osem USA also offers a number of post-sale services for the Osem USA Products including returns, spoils allowances, "scan-backs," and customer service. These services result in a different experience for retailers and consumers of Osem USA Products compared to retailers and consumers of grey market Osem Israel Products distributed by Mega Kosher:

        (a)     Returns: Osem USA allows returns of certain Osem USA Products if retailers and/or customers are dissatisfied with those Osem USA Products. However,

because Osem USA does not sell or distribute the Osem Israel Products diverted into the U.S. market by Mega Kosher, retailers and consumers who purchase those products will not be able to return them to Osem USA, potentially damaging the customer perception of Osem USA and the Nestlé Marks.

(b)     Spoils Allowances and "Scan-Backs": Osem USA provides certain credits to retailers for Osem USA Products that have been spoiled or damaged and for Osem USA Products that have been sold at a discounted price. These credits help prevent retailers from losing money on products that are damaged or spoiled or that remain unsold. The credits also encourage retailers to remove spoiled and/or damaged products from their shelves and to offer lower prices for Osem USA Products. However, Osem USA cannot provide credits for Osem Israel Products because Osem USA does not provide those Osem Israel Products to retailers in the first instance.

(c)     Customer Service: Retailers and consumers who have purchased Osem USA Products may contact Osem USA's customer service staff in the United States to address any concerns that they have about their Osem USA Products, and Osem USA's customer service staff can address those concerns. However, Osem USA's customer service staff cannot address concerns that retailers and consumers raise about Osem Israel Products that they have purchased, as Osem USA has no involvement in the Osem Israel Products' manufacture, labeling, distribution, or sale.

48.     By providing these post-sale services for the Osem USA Products, Osem USA builds goodwill for itself, the Osem USA Products, and the Nestlé Marks in the United States. However, U.S. purchasers of Osem Israel Products do not enjoy those services, thereby diminishing the goodwill of the Nestlé Marks.

***Mega Kosher's Use of Stickers on Certain Osem Israel Products***

49.     Upon information and belief, Mega Kosher has, in some instances, distributed and/or sold Osem Israel Products that include unauthorized and inaccurate stickers that cover some or all of the original product labels. The stickers that appear on these products provide information intended to create the impression that retailers and/or consumers are purchasing Osem USA Products and/or that the Osem Israel Products comply with U.S. labeling requirements and other regulations. However, the stickers are insufficient to bring the Osem Israel Products into compliance with U.S. regulations.

50.     By selling products with stickers that fail to comply with the FDA's labeling requirements, Mega Kosher undermines the FDA's efforts to ensure that consumers make informed food choices, to facilitate price comparisons, and to prevent fraud upon consumers. Mega Kosher's failure to comply with federal regulations also undermines goodwill for Osem USA, Osem USA Products, and the Nestlé Marks throughout the United States.

***Effects of Mega Kosher's Wrongful Conduct on Osem USA and its Customers***

51.     Retailers and consumers have purchased Osem Israel Products sold and distributed by Mega Kosher under the mistaken belief that those products are Osem USA Products and/or that the distribution and sale of those products is associated with Osem USA. As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing—products that lack the required label statements, product formulation, food safety compliance, and post-sale services that they were expecting. This consumer confusion and resulting damage to Osem USA and the goodwill associated with the Nestlé Marks is likely to continue if Mega Kosher's infringing activities are not stopped. This has harmed and continues to harm Osem USA's goodwill and reputation and the goodwill associated with the Nestlé Marks in

the United States.

52.     Further, by circumventing legitimate distribution channels and quality control procedures and by failing to provide the services that Osem USA and its legitimate distributors provide to retailers and consumers, Mega Kosher has been able to offer artificially low prices for the Osem Israel Products. As a result, some retailers and consumers seeking lower prices have purchased Osem Israel Products sold in the United States by Mega Kosher rather than Osem USA Products intended for distribution and sale in the United States. These transactions have resulted and will continue to result in substantial losses to Osem USA and its authorized distributors, disruptions to Osem USA's business relationships with its customers and consumers, and the rights that Osem USA has granted to its authorized distributors. This harm to Osem USA, its business partners, and its consumers will continue if Mega Kosher's infringing activities are not stopped.

53.     Mega Kosher has engaged in this unlawful conduct despite knowing that it is infringing upon Osem USA's and SPN's rights to the Nestlé Marks in the United States.

## FIRST CAUSE OF ACTION

### Trademark Infringement, 15 U.S.C. § 1114(1)

54.     Osem USA is an exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.

55.     In the United States, Osem USA or its predecessors have used the Nestlé Marks continuously for decades to identify their goods and distinguish those goods in the marketplace by, among other things, prominently displaying the Nestlé Marks on the Osem USA Products and their packaging and marketing materials.

56.     Defendant has infringed Osem USA's rights to the Nestlé Marks in interstate commerce by various acts including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Israeli market, are materially different from the Osem USA Products that Osem USA sells in the U.S. market, and were not authorized by Osem USA for sale in the United States under the Nestlé Marks.

57.     Defendant's acts of infringement have caused, and are likely to continue to cause, confusion, mistake, and deception in that consumers and others in the United States are likely to believe that Osem USA authorizes and controls the sale of Defendant's products and/or that Defendant is associated with or related to Osem USA or is authorized by Osem USA to distribute or sell the Osem USA Products in the United States.

58.     Defendant's acts of infringement have been committed deliberately and willfully, with knowledge of Osem USA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the Nestlé Marks when used in connection with the diverted and unauthorized Osem Israel Products. Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

59.     Defendant had actual and constructive knowledge of Osem USA's superior and exclusive rights in and to the Nestlé Marks in the United States prior to Defendant's adoption and use of the Nestlé Marks, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

60.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN has consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the U.S. market.

61.     By reason of Defendant's wrongful acts of infringement, Plaintiffs have suffered and will continue to suffer injury and damage by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

62.     Further, by reason of Defendant's wrongful acts of infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

63.     If not restrained, Defendant will have unfairly derived and will continue to derive income, profits, gain, and business opportunities as a result of its acts of infringement.

64.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Osem Israel Products to be destroyed pursuant to 15 U.S.C. § 1118, as well as disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION

### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)

65.     Osem USA holds an exclusive license of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.

66.     Defendant has, without authorization, imported, distributed, and sold in the United States products featuring the Nestlé Marks, which products are materially different from the Osem USA Products authorized for U.S. sale by Osem USA.

67.     Defendant's unauthorized importation, distribution, and sale of products bearing the Nestlé Marks that are materially different from the Osem USA Products sold by Osem USA in the United States places the nature and quality of products bearing the Nestlé Marks that are sold in the United States beyond the control of Osem USA and deprives Osem USA of the ability to control the same.

68.     Defendant's acts of false designation of origin and unfair competition have caused, and are likely to continue to cause, confusion, mistake, and/or deception as to the affiliation, connection, and/or association of Defendant with Osem USA and as to the origin, sponsorship, and/or approval of Defendant's goods, in that consumers and others in the United States are likely to believe that Osem USA authorizes and controls the sale of Defendant's products or that Defendant is associated with and/or is authorized by Osem USA to distribute or sell products bearing the Nestlé Marks in the United States.

69.     Defendant's acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of Osem USA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the Nestlé Marks when used in connection with the diverted Osem Israel Products. Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive retailers and end consumers.

70.     Defendant had actual and constructive knowledge of Osem USA's superior rights in and to the Nestlé Marks prior to Defendant's adoption and use of the Nestlé Marks, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

71.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN has consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the U.S. market.

72.     By reason of Defendant's wrongful acts of unfair competition, Plaintiffs have suffered and will continue to suffer injury and damage by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

73.     Further, by reason of Defendant's wrongful acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

74.     Defendant's acts of unfair competition are causing substantial harm to Osem USA as an exclusive licensee of rights to sell products under the Nestlé Marks in the United States.

75.     If not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts of unfair competition.

76.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Osem Israel Products to be destroyed pursuant to 15 U.S.C. § 1118, and to disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

**THIRD CAUSE OF ACTION**

**Trademark Dilution, 15 U.S.C. § 1125(c)**

77.     Osem USA is an exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.

78.     The Nestlé Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

79.     The Nestlé Marks are widely recognized by the general consuming public of the United States as a designation of source of Osem USA's goods, including the Osem USA Products.

80.     The Nestlé Marks became famous source indicators for the Osem USA Products long before Defendant commenced its infringing activities.

81.     Defendant's acts have diluted the Nestlé Marks in the United States by blurring their association with the Osem USA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets. In addition, Defendant's distribution and sale of goods intended for the Israeli market (which have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendant's placement of unauthorized stickers in a manner that defaces the Nestlé Marks and fails to comply with relevant U.S. regulations have diluted the Nestlé Marks by tarnishment.

82.     Defendant had actual and constructive knowledge of Osem USA's superior rights in and to the Nestlé Marks in the United States prior to Defendant's adoption and use of the Nestlé Marks in the United States, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

83.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN has consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the United States market.

84.     Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court. Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and restraining Defendant from diverting, distributing, and selling the Osem Israel Products in the United States.

## FOURTH CAUSE OF ACTION

### Trademark Dilution, Fla. Stat. § 495.151

85.     Osem USA is an exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.

86.     The Nestlé Marks are "distinctive and famous" within the meaning of Florida Statute § 495.151(1) because, among other things, they are widely recognized by the general consuming public of Florida as a designation of source of Osem USA's goods, including the Osem USA Products.

87.     The Nestlé Marks became distinctive and famous prior to Defendant's acts as alleged herein.

88.     Defendant's acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the Nestlé Marks.

89.     Defendant's acts have diluted the Nestlé Marks in Florida and the United States by blurring their association with the Osem USA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets. In addition, Defendant's distribution and sale

of goods intended for the Israeli market (which have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendant's placement of unauthorized stickers in a manner that defaces the Nestlé Marks and fails to comply with relevant U.S. regulations have diluted the Nestlé Marks by tarnishing them.

90.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN have consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the United States market.

91.     Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless enjoined by this Court. Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining Defendant from diverting, distributing, and selling the Osem Israel Products in the United States and restoring to Osem USA profits that were wrongfully collected by Defendant.

<strong><u>FIFTH CAUSE OF ACTION</u></strong>

<strong>Unfair Competition, Fla. Stat. §§ 501.201 et seq.</strong>

92.     Osem USA is an exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.

93.     Defendant has violated 15 U.S.C. § 1114 by using the Nestlé Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception, without the consent of the Nestlé Marks' registrant, SPN.

94.     Defendant has also violated 15 U.S.C. § 1125(a) by using the Nestlé Marks in commerce in a manner likely to cause confusion, mistake, and deception as to the connection

between Defendant and Osem USA and as to the origin, sponsorship, or approval of Defendant's products for sale in the United States by Plaintiffs.

95.     Defendant has also violated 15 U.S.C. § 1125(c) and Florida Statute § 495.151 by using the Nestlé Marks in commerce in a manner likely to cause dilution by blurring and by tarnishment of the Nestlé Marks.

96.     Defendant's marketing and advertisement of products with the Nestlé Marks in the United States, as alleged herein, was intended to and did mislead customers to purchase Osem Israel Products from Defendant with the belief that such products were manufactured or distributed by, or authorized for manufacture or distribution by, Osem USA.

97.     This conduct, together with Defendant's other acts alleged herein, constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce under Florida Statute § 501.204(1). Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless enjoined by this Court, and Plaintiffs are without an adequate remedy at law.

98.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN have consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the United States market.

99.     As a result of Defendant's wrongful conduct, Plaintiffs are entitled to, among other relief, an order enjoining Defendant from diverting, distributing, and selling the Osem Israel Products in the United States and restoring to Osem USA profits that were wrongfully collected by Defendant, damages, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

### Common Law Unfair Competition

100.     Osem USA is an exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the Osem USA Products.  In the United States, Osem USA or its predecessors have used the Nestlé Marks continuously for decades.

101.     Defendant has and continues to engage in unfair competition by infringing the Nestlé Marks through various acts, including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Israeli market, and were not manufactured by Osem USA for sale in the United States under the Nestlé Marks.

102.     Defendant's acts of unfair competition are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe Osem USA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or related to Osem USA or is authorized by Osem USA to distribute or sell the Osem USA Products in the United States.

103.     Defendant's acts of unfair competition have been committed deliberately and willfully, with actual and constructive knowledge of Osem USA's exclusive and superior rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of Defendant's conduct. Defendant's acts have also been committed with bad faith and with the intent to cause confusion or mistake and/or to deceive.

104.     By reason of Defendant's acts of unfair competition, Plaintiffs have suffered and will continue to suffer injury and damage by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales

and/or market share, among other reasons.

105.    Further, by reason of Defendant's acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

106.    Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither Osem USA nor SPN have consented to the sale of the Osem Israel Products bearing the Nestlé Marks in the United States market.

107.    As a result of Defendant's acts of unfair competition, Plaintiffs are entitled to, among other relief, an order enjoining Defendants from diverting, distributing, and selling the Osem Israel Products in the United States and restoring to Osem USA profits that were wrongfully collected by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Osem USA and SPN pray for a final judgment against Defendant:

108.    Finding that Defendant has infringed the Nestlé Marks in violation of 15 U.S.C. § 1114(1), causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

109.    Finding that Defendant has committed acts of false designation or origin and unfair competition in violation of 15 U.S.C. § 1125(a), causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

110.     Finding that Defendant has diluted the Nestlé Marks in violation of 15 U.S.C. § 1125(c), causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

111.     Finding that Defendant has diluted the Nestlé Marks in violation of Fla. Stat. § 495.151, causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

112.     Finding that Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute § 501.204(1), causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

113.     Finding that Defendant has engaged in unfair methods of competition in violation of the laws of the State of Florida, causing substantial and irreparable injury, loss, and damage to Plaintiffs' rights in and to the Nestlé Marks, and damage to the goodwill associated therewith;

114.     Granting preliminary and permanent injunctive relief against Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them from doing any of the following acts, either directly or indirectly:

(a)     Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Nestlé Marks in the United States that are not authorized for sale in the U.S. market, including, but not limited to, the Osem Israel Products;

(b)     Using any of the Nestlé Marks or any other trademark owned by SPN and/or licensed to Osem USA in connection with its business;

(c)     Otherwise infringing the Nestlé Marks or any other trademark owned by SPN and/or licensed to Osem USA;

(d)     Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the Osem USA Products or any other products manufactured, distributed, or sold by Osem USA and/or that bear the Nestlé Marks;

(e)     Using any false designation of origin or false representation concerning the Osem USA Products or any other products manufactured, distributed, or sold by Osem USA and/or that bear the Nestlé Marks; and

(f)     Committing any further acts of unfair competition or unfair practice affecting Plaintiffs; the Osem USA Products; or any other products manufactured, distributed, or sold by Osem USA and/or that bear the Nestlé Marks;

115.    Ordering Defendant to file with this Court and serve on Plaintiffs within 30 days after service of an injunction a report, in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

116.    Ordering seizure of the Osem Israel Products or any other products bearing the Nestlé Marks located in the United States in the possession of Defendant or its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

117.    Ordering an accounting and disgorgement of all of Defendant's profits resulting from its sales of Osem Israel Products and any other products bearing a Nestlé Mark in the United States;

118.    Awarding Plaintiffs their reasonable attorneys' fees and costs of suit; and

119.    Such other and further relief as the Court may deem proper.

Dated: October 1, 2024

VINSON & ELKINS LLP

*/s/ Jorge. D Guttman* _____
Jorge D. Guttman
Florida Bar No. 15319
Gunster, Yoakley & Stewart, P.A.
600 Brickell Avenue
Brickell World Plaza
Suite 3500
Miami, FL 33131
Telephone: (305) 376-6054
Fax: (305) 376-6010
Email: jguttman@gunster.com

Adam Hudes (*Pro Hac Vice* to be filed)
District of Columbia Bar No. 495188
Stephen M. Cohen (*Pro Hac Vice* to be filed)
District of Columbia Bar No. 1656437
VINSON & ELKINS LLP
2200 Pennsylvania Ave., NW
Suite 500-West
Washington, D.C. 20037
Telephone: (202) 639-6632
Fax: (202) 879-8822
Email: ahudes@velaw.com
Email: scohen@velaw.com

Corbin J. Cessna
Texas Bar No. 24120753
VINSON & ELKINS LLP
200 West 6th Street, Suite 2500
Austin, TX 78701
Telephone: (512) 542-8400
Fax: (512) 542-8612
Email: ccessna@velaw.com

**ATTORNEYS FOR PLAINTIFFS OSEM USA
INC. AND SOCIÉTÉ DES PRODUITS
NESTLÉ S.A.**